63  183
74  410

### Belle T. McWilliams et al. *v.* J. P. Norfleet et al.

Guardian. *Bond of. Liability of sureties. Case in judgment.*

R. was the guardian of M., a minor. R. and A. formed a partnership, and borrowed from R. money belonging to M., giving therefor the note of the firm, payable to R. as guardian. Some time after this note was given, R. executed a new guardian's bond, with new sureties. R. and A. remained solvent for a long time after this new bond was executed, but R. made no effort to collect the note due his ward. R. and A. became insolvent. *Held,* that the sureties on the new bond are liable, not only for money and assets of the ward's estate, which actually came into the hands of R. after the execution of the new bond, but also for such as he might and could have collected by a faithful administration of his office.

Appeal from the Chancery Court of Marshall County.

Hon. B. T. Kimbrough, Chancellor.

In 1869 R. A. Roberts was made the guardian of Belle T. Means and her two sisters, minors, and executed the required bond. In 1872 Roberts and Anderson entered into a partnership for the purpose of carrying on a general merchandise business. Roberts, without any order of court, loaned the firm of Roberts & Anderson, of which he was a member, ten thousand dollars of money belonging to his wards, taking the note of the firm therefor, payable to him as guardian. In February, 1873, R. E. Chew was taken into the firm as an equal partner, and the business of the old firm merged into that of Roberts, Anderson & Chew. In April, 1873, Roberts, of his own motion, appeared before the court and executed a new guardian's bond, with J. P. Norfleet, R. O. Woodson, J. R. Daugherty, W. S. Puryear, J. D. Fennell, and James B. Potts as sureties. Both Roberts and Anderson were

solvent long after the execution of this new bond, but Roberts made no effort to collect the note. In 1880 Roberts, and the firm of which he was a member, failed. Mrs. Belle T. McWilliams, formerly Belle T. Means, exhibited a bill against Roberts, praying for a final settlement of his account as guardian, and made the sureties on the second bond parties to the suit. The matter was referred to a special commissioner under a decree of the court, and he reported that there was still due Mrs. McWilliams from Roberts upward of five thousand dollars, but that the sureties on the new bond were only liable for about one hundred and seventy dollars. The complainant excepted to this report, because the commissioner had not charged R. A. Roberts and the sureties on the second bond with the whole amount of the ten thousand dollars embraced in the note of Roberts & Anderson. The presiding Chancellor confirmed the report of the commissioner, which was made in pursuance of an interlocutory decree rendered by his predecessor, Chancellor A. B. Fly. From this decree of confirmation the complainants appealed.

*Fant & Fant,* for the appellants.

1. The proof is that on the 15th of April, 1873, when the second bond was made, Roberts & Anderson were abundantly solvent, and so continued for years.

Roberts, the guardian, had the note of this firm payable *not* to him individually but to William A. Roberts, guardian. He ought to have collected this note. He *could* have done so. Who is responsible for this failure? Not his old sureties if they were discharged.

His ward was a minor. She could do nothing of herself, but has the option, on coming of age, to hold him responsible and sue him on his old *bond* for this specific conversion, or to hold the sureties on his new bond responsible for his failure to collect the money due to him on the note of Roberts & Anderson to himself as guardian.

The testimony shows that both continued solvent until 1878, and had private property in addition to their stock of goods, and could at any time have paid their debts.

2. If the guardian failed to collect the assets of his ward, or if their estate or any part of it was lost by his negligence, he is responsible.    *Crump* v. *Gerock*, 40 Miss. 768, 769; *Moffatt* v. *Loughridge*, 51 Miss. 212.

*J. T. Fant*, of counsel for the appellants, argued the case orally.

*R. S. Stith*, on the same side.

The neglect of the guardian to collect the note of Roberts & Anderson was a plain breach of the second bond, and for the damages resulting from it the appellees should be held responsible. What those damages are depends upon how the other questions involved in this controversy may be decided.    *Crump* v. *Gerock*, 40 Miss. 765, 770, 771; *McFarlane* v. *Randle*, 41 Miss. 411, 427, 428.

*R. S. Stith* also made an oral argument.

*Watson, Watson & Smith*, for the appellees.

1. The doctrine which we rely on for appellees is very clearly stated by the court in the case of *State* v. *Sooy*, 39 N. J. (Law) 542, from which the following is an extract:

"It is conceded that sureties on an official bond are not liable for the prior defalcations of their principal.    They are answerable for moneys received by him of his predecessor or previously collected by him, if such moneys were *actually in hand at the time of the giving of the bond;* but they are not liable for past dereliction of duty unless the bond be retrospective in its language."

See also *Lewenthal* v. *The State*, 51 Miss. 649; *Vivian* v. *Otis*, 24 Wis. 518; *The State ex rel., etc.*, v. *Sanders*, 62 Ind. 426; *The State ex rel., etc.*, v. *Page*, 62 Ind. 209; *Farrar & Brown* v. *U. S.*, 5 Peters 373; *U. S.* v. *Boyd*, 15 Peters 187.

2. There is not a case in all the books, so far as we have been able to examine them, in which the sureties of a guardian on a bond executed *after* his conversion of his ward's assets, have been held liable for the same, for the reason that by proper care and diligence the defaulting guardian might have got back his ward's money after the said bond went into effect.

*J. W. C. Watson* and *J. H. Watson*, of counsel for the appellees, argued the case orally.

ARNOLD, J., delivered the opinion of the court.

It was decided on a former appeal in this case that the bond executed by Roberts, on the 15th day of April, 1873, was security for the faithful performance of his duties as guardian from that date, and that the first bond executed by him was security only for default occurring prior to the execution of the second bond. *McWilliams* v. *Norfleet*, 60 Miss. 987.

What were the duties of Roberts as guardian after the execution of the second bond? Were they in any manner less than they had been before, or different from the obligations usually assumed by guardians? Clearly not. It was his duty, as guardian then, as it had been before, to exercise reasonable care and diligence in the management of the ward's estate, to collect debts and securities belonging to the estate, and to administer the trust confided to him for the benefit of the wards, and not for the advantage of himself or his associates in business. 2 Kent Com. 229, 230; 1 Perry on Trusts, §§ 266, 438–441; Schouler on Dom. Rel. 461, 462.

A guardian's bond imports responsibility for losses occasioned by negligence or inattention, as well as for the corruption of the guardian. It cannot be that a breach of the first bond confers any immunity upon Roberts or the sureties on his second bond for an infraction of the latter. They are liable not only for money and assets of the wards' estate which " actually came into the hands " of Roberts after the second bond was executed, but also for such as he might and could have collected and reduced to possession by a faithful administration of his office. Any other doctrine would be a novelty in the law in relation to guardians and trusts. *Crump* v. *Gerock*, 40 Miss. 765; *Banks* v. *Macken*, Ib. 256; *Moffatt* v. *Loughbridge*, 51 Miss. 211; Perry on Trusts, §§ 266, 438–441.

The record shows that when the second bond was executed Roberts held a note for ten thousand dollars, payable to him as guardian, made by a solvent firm, of which he was a member, for money of his wards previously lent by him without an order of court for that purpose, and that for several years afterward the note could, unquestionably, have been collected by proper attention,.

and that Roberts made no effort whatever to collect the note, and that the money due thereon was lost.

The sureties on the second bond are liable for the amount of the note and interest thereon at ten per cent., as well as for other money collected by the guardian after they became sponsors for his fidelity.

*The decree is reversed and the cause remanded, with directions for an account to be taken and a decree entered in favor of appellants, in accordance with the principles announced in this opinion.*