[No. 7332.  Decided September 15, 1908.]

LILLIAN SCHLARB *et al.*, *Appellants*, v. LOUIS CASTAING *et al.*,
*Respondents.*[1]

HUSBAND AND WIFE—COMMUNITY PROPERTY—DESCENT AND DISTRIBUTION.  Upon the death of a husband his community real property descends one-half to the wife and one-half, share and share alike, to his children, who become tenants in common.

MORTGAGES—FORECLOSURE—PARTIES—NECESSARY PARTIES DEFENDANT.  Minor heirs of a deceased mortgagor of community property are necessary parties defendant to an action to foreclose the mortgage.

LIMITATION OF ACTIONS—RECOVERY OF REAL ESTATE—ADVERSE POSSESSION—STATUTES — CONSTRUCTION—AUTHORIZED SALE — INFANTS—TENANCY IN COMMON.  Laws 1893, p. 20, § 1 (Bal. Code, § 5501), providing that actions to recover real estate of which any person may be possessed for seven years "having a connected title deducible . . . from any sheriff . . . authorized to sell such land on execution" shall be brought within seven years after possession taken, operates to bar an action by minors to recover an interest in property sold under mortgage foreclosure execution, although the minors were necessary parties to the foreclosure and were not joined and the foreclosure did not affect their interests and the purchaser was only their tenant in common, where the purchaser understood he was buying the entire property and maintained adverse possession for seven years for his own exclusive benefit; since the sale was "authorized" if directed by a judgment, whether the judgment was subject to attack or not.

[1]Reported in 97 Pac. 289.

SAME—PERSONS UNDER DISABILITY—INFANTS. The legislature has power to provide that statutes of limitations shall run against minors, and such was the intent of Laws 1893, p. 20, § 1, providing a seven-year limitation for lands held under judicial sale; since by section 5, only in the case of the 3rd and 6th sections of the act are infants excepted from its operation.

Appeal from a judgment of the superior court for Pierce county, Clifford, J., entered September 20, 1907, upon findings in favor of the defendants, upon granting a nonsuit, after a trial on the merits, dismissing an action for partition. Affirmed.

*Leo & Cass* and *L. C. Whitney*, for appellants. The heirs of deceased were tenants in common. *Mabie v. Whittaker*, 10 Wash. 656, 39 Pac. 172; *Vermont Loan & Trust Co. v. Cardin*, 19 Wash. 304, 53 Pac. 164. The plaintiffs not being made parties to the foreclosure suit were not affected by it. *Anrud v. Scandinavian-American Bank*, 27 Wash. 16, 67 Pac. 364; *Investment Securities Co. v. Adams*, 37 Wash. 211, 79 Pac. 625; *Sawyer v. Vermont Loan & Trust Co.*, 41 Wash. 524, 84 Pac. 8; Jones, Mortgages, § 1414. The legal effect of the foreclosure proceedings was to acquire the undivided interest of the mother, that being the one-half, since the plaintiff in that action must have had actual knowledge or the means of knowledge of the interests of the infants. Jones, Mortgages, § 969; *McMahill v. Torrence*, 163 Ill. 277, 45 N. E. 269; *German Fire Ins. Co. v. Gueck*, 130 Ill. 345, 23 N. E. 112, 6 L. R. A. 835, and note; *Miller v. Powers*, 119 Ind. 79, 21 N. E. 455, 4 L. R. A. 483, and note; 15 Ency. of Law, p. 645, § 5. The mistaken belief that the heirs were not necessary parties was a mistake of fact and not of law, for which no relief can be given. *Allen v. Galloway*, 30 Fed. 466; Story, Equity (9th ed.), § 138. The interest of the defendants in a foreclosure is all the court undertakes to sell, and it is all a purchaser gets. *McMahill v. Torrence, supra;* Jones, Mortgages, §§ 953, 1654; *Anrud v. Scandinavian-American Bank, Investment Securities Co. v. Adams*, and

*Sawyer v. Vermont Loan & Trust Co., supra.* The defend-
ants acquired the interest of the mother, and became tenants
in common with the plaintiffs, and they did nothing after-
wards that would be sufficient to start the general statute of
limitations or seven-year statute to run against their co-
tenants.    Freeman, Cotenancy (2d ed.), §§ 166-167; *Yar-
wood v. Johnson*, 29 Wash. 643, 70 Pac. 123. To start the
statute to run against a cotenant there must be an ouster, a
disseizin.   Bal. Code, § 5517 (P. C. § 1153); *Day v. Davis*,
64 Miss. 253, 8 South. 203; *Morris v. Davis*, 75 Ga. 169.
The possession was not hostile or exclusive, or manifested by
adverse acts. 1 Cyc. 1073, § 4; *Cooter v. Dearborn*, 115 Ill.
509, 4 N. E. 388; *Todd v. Todd*, 117 Ill. 92, 7 N. E. 583;
*Justice v. Lawson*, 46 West Va. 163, 33 S. E. 102; *Blackaby
v. Blackaby*, 185 Ill. 94, 56 N. E. 1053; *McMahill v. Tor-
rence, supra; Schoonover v. Tyner*, 72 Kan. 475, 84 Pac.
124; *Clark v. Beard*, 59 W. Va. 669, 53 S. E. 597. A
sheriff's deed, purporting to sell the whole title, is no more
than a quitclaim deed to the interest of the party actually
sold.  *Curtis v. Barber*, 131 Iowa 400, 108 N. W. 755, 117
Am. St. 425.

*Boyle, Warburton, Quick & Brockway*, for respondents,
contended, among other things, that the possession was suffi-
ciently adverse as against tenants in common. *Cox v. Tomp-
kinson*, 39 Wash. 70, 80 Pac. 1005; *Cain v. Furlow*, 47 Ga.
674; *Switzler v. Northern Pac. R. Co.*, 45 Wash. 221, 88
Pac. 137; *Mabie v. Whittaker*, 10 Wash. 656, 39 Pac. 172;
*Armijo v. Neher*, 11 N. M. 645, 72 Pac. 12; *Gregory v.
Gregory*, 102 Cal. 50, 36 Pac. 364; *Feliz v. Feliz*, 105 Cal.
1, 38 Pac. 521; *Winterburn v. Chambers*, 91 Cal. 170, 27
Pac. 658; *Baird v. Baird's Heirs*, 21 N. C. 524, 31 Am. Dec.
399; *Lapeyre v. Paul*, 47 Mo. 586; *Littlejohn v. Barnes*, 138
Ill. 478, 28 N. E. 980. The statute runs against minors.
*Vance v. Vance*, 108 U. S. 514, 2 Sup. Ct. 854, 27 L. Ed. 808;
*Schauble v. Schulz*, 137 Fed. 389; *Woodbury v. Schakleford,*

19 Wis. 65; *Powell v. Koehler*, 52 Ohio St. 103, 39 N. E. 195, 49 Am. St. 705, 26 L. R. A. 480; *Peterson v. Delaware River Ferry Co.*, 190 Pa. St. 364, 42 Atl. 955; *Hines v. Weaver*, 84 Ga. 265, 10 S. E. 741; *Mewburn's Heirs v. Bass*, 82 Ala. 622, 2 South. 520; *Norton v. New York*, 16 Misc. Rep. 303, 38 N. Y. Supp. 90; *Favorite v. Booher's Adm'r.*, 17 Ohio St. 548; *DeMoss v. Newton*, 31 Ind. 219.

FULLERTON, J.—This is an action for the partition of real property. The facts out of which the controversy arises are, in substance, these: On September 24, 1892, William A. Freeman and his wife, Belle Freeman, being then the owners of the property in question, mortgaged the same to Robert Maynard to secure the repayment, with interest, of a loan of $1,500, made to them by Maynard. Mr. Freeman died intestate on February 2, 1894, leaving as his heirs at law two daughters and two sons, children of himself and Belle Freeman. Mrs. Freeman was shortly thereafter appointed administratrix of his estate. The mortgage debt was left unpaid, and was purchased from Maynard by Louis Castaing sometime during the year following Mr. Freeman's death.

In 1898 Castaing brought a suit to foreclose the mortgage. To this suit he made Mrs. Freeman a party, both in her official and individual capacities, but did not make the heirs at law of Mr. Freeman parties thereto. The foreclosure proceeded to a judgment and order of sale against the entire property, and the property was sold thereunder to Louis Castaing for the full amount of the mortgage debt, interest and costs. At the time of sale, a sheriff's certificate of sale showing a foreclosure of the property was issued and delivered to Castaing, and later, after the time for redemption had expired, a sheriff's deed was executed and delivered to him. Mr. Castaing entered into possession of the property immediately on receiving the sheriff's certificate of sale, and from that time to the commencement of the present action has

maintained open and notorious possession of the property, paying all state, county and municipal taxes that have been assessed thereon, such possession continuing for a period of more than seven years next after possession was taken. At the time the foreclosure proceedings were instituted, two of the heirs of William A. Freeman were minors. The elder of these reached the age of majority some four years after his father's death, while the younger was still a minor at the time of the institution of the present action.

The appellants in the action at bar are the children of William A. Freeman. They sue to recover a half interest in the land on the theory that their father's interest and title therein descended to them upon his death, and was not cut off by the foreclosure proceedings had by Castaing against their mother. In substance, they allege that they are the owners of an undivided one-half interest in the property, holding the same as tenants in common with the respondents; that the respondents are in possession thereof and deny that the appellants had any title or interest therein and refuse to account to them for any share of the rents and profits of the property. To the complaint the respondents make two contentions: First, that the interests of the appellants were cut off by the foreclosure proceedings; and, second, that any right to recover, conceding that their interests did survive the foreclosure, was barred by the seven-year statute of limitations. The trial court held with the respondents on the last ground stated, and entered judgment to the effect that the appellants take nothing by their action. This appeal is from that judgment.

While there is a controversy between counsel as to the respective relations of the parties to the property, and their rights growing out of the foreclosure sale, we do not think the questions suggested merit extended discussion. Since the property was the community property of William A. Freeman and his wife Belle Freeman, it passed, on the death

of Mr. Freeman, one-half to Mrs. Freeman as the survivor of the community, and one-half share and share alike to the appellants as the sole legitimate issue of the body of Mr. Freeman, and that these several persons, as long as they retained title to the property, held it as tenants in common. It must follow, also, that the appellants were necessary parties to the foreclosure proceedings, if their interests in the property were to be cut off, and as they were not made parties thereto their interests were not affected by it; that the only effect of that proceeding was to pass the title of the one-half interest of Mrs. Freeman to the purchaser at the foreclosure sale, and to make such purchaser a tenant in common in the property with the appellants.

We cannot think, however, that when the purchaser entered into possession of the property after his purchase at the sale, that his possession conferred seizure upon his co-tenants. It is clear that he understood that he was purchasing the entire property, and that his entry into possession was for his sole and exclusive benefit as owner of the property, and that he never thereafter recognized the appellants or any one in privity with them as having any interest in the property. Such a possession, under the rule of *Cox v. Tompkinson*, 39 Wash. 70, 80 Pac. 1005, was sufficiently adverse, even against a tenant in common, to start running the statute of limitations. That case is authority also for the holding that the statute has run against the appellants who had reached the age of majority at the time the purchaser entered into possession of the property under the foreclosure sale, as since that time his possession has been actual, open and notorious, under color of title made in good faith, and during such time he has paid all taxes legally assessed on such lands. That case was founded, however, upon the third section of the act of 1893 (Laws 1893, p. 20), and by the fifth section of the same act it is expressly provided that the third section shall not "extend to lands or tenements when there shall be an

adverse title to such lands or tenements, and the holder of such adverse title is an infant or person under legal age, or insane."

If, therefore, the appellants who were minors at the time the respondents entered into possession of the premises are barred of their right of recovery, it is in virtue of the first section of the.act cited, which is made applicable to minors as well as adult claimants of property. That section reads as follows:

"That all actions brought for the recovery of any lands, tenements or hereditaments of which any person may be possessed by actual, open and notorious possession for seven successive years, having a connected title in law or equity deducible of record from this state or the United States, or from any public officer, or other person authorized by the laws of this state to sell such land for the nonpayment of taxes, or from any sheriff, marshal or other person authorized to sell such land on execution or under any order, judgment or decree of any court of record, shall be brought within seven years next after possession being taken as aforesaid, but when the possessor shall acquire title after taking such possession, the limitation shall begin to run from the time of acquiring title." Laws 1893, p. 20, § 1, Bal. Code, § 5501 (P. C. § 1158).

The question must turn, it will be observed, on the meaning that is given to the word "authorized." If that word is to have the meaning of "lawfully authorized," that is to say, if the authorization must have behind it a judgment or decree of a court of record valid against both collateral and direct assaults, then clearly this sale is not authorized within the meaning of that word as it is used by the statute. But, on the other hand, if its meaning is that a sale is authorized when it is directed by a judgment or decree of a court of record fair upon its face, then it is just as clear that the sale was authorized. It seems to us that the latter is the correct meaning. In legal parlance, the order of the court which appar-

ently finally determines the rights of the parties in the action
or suit is spoken of as the judgment or decree. In fact, so
general are these terms in the common understanding that
the word valid, voidable, or void is usually prefixed to them in
order to mark their relative value. The legislature we think,
since it used only the general terms without a prefix, must
have meant the first order entered by the court which pur-
ported to determine finally the rights of the parties in the
action, regardless of the question of the validity of that
order. To give it any other meaning would be to destroy the
purposes of the act. If the authorization to be valid must
have behind it a judgment or decree invulnerable to every
form of assault, there would be very little need of the statute.
It could then only apply to the proceedings of the sheriff had
in the execution of the writ or order of sale, and it would be
hard to conceive of a case where the sheriff has made a sale
and so defectively executed the writ or order as to confer no
rights at all upon the purchaser at the sale. The real evil
lay in the proceedings back of the judgment or decree, and it
was this the statute intended to correct.

It is argued that this section was not intended to apply to
the estates of minors, but we think the statute clear upon this
question. The statute as originally enacted defined three
distinct cases where color of title, accompanied with certain
conditions, would operate as a bar, after a fixed time, to a
recovery by the legal owner. Minors and insane persons were
exempted from the operation of two of them. Manifestly,
therefore, the third was intended to apply to minors as well
as to adults. The power of the legislature to enact such a
statute is indisputable. The rule cannot be better stated
than in the language of Mr. Justice Miller in *Vance v. Vance*,
108 U. S. 514, 2 Sup. Ct. 854, 27 L. Ed. 808, where he uses
the following language:

"It is urged that because the plaintiff in error was a minor
when this law went into operation, it cannot affect her rights.

But the constitution of the United States, to which appeal is made in this case, gives to minors no special rights beyond others, and it was within the legislative competency of the state of Louisiana to make exceptions in their favor or not. The exemptions from the operation of statutes of limitation usually accorded to infants and married women do not rest upon any general doctrine of the law that they cannot be subjected to their action, but in every instance upon express language in those statutes giving them time after majority, or after cessation of coverture, to assert their rights."

The judgment appealed from is affirmed.

HADLEY, C. J., MOUNT, and ROOT, JJ., concur.